162 So. 200

**SCHMIDT et al. v. LLANO DEL RIO CO. OF NEVADA.**

No. 33412.

May 27, 1935.

A. James McDonald, of Shreveport, for relators.

S. I. Foster, of Leesville, for respondent.

HIGGINS, Justice.

Relators, as judgment creditors, instituted this suit against Llano del Rio Com-

pany of Nevada, a Nevada corporation, operating in the parish of Vernon, this state, for the purpose of having the corporation placed in the hands of a receiver, due to alleged mismanagement and fraudulent and dishonest operations which dissipated and jeopardized the assets and property of the company to the prejudice and detriment of the creditors and stockholders thereof.

The company pleaded in bar an order of the moratorium commissioner issued by virtue of the provisions of Act No. 2 of the Second Extra Session of the Legislature of Louisiana of 1934, suspending all laws or parts of laws relative to the enforcement of the debts due by the corporation.

■ The district judge held that Act No. 2 of the Second Extra Session of the Legislature .of 1934, generally known as "The Moratorium Statute," was applicable for the protection of debtor corporation, and that an order of the moratorium commissioner suspending all laws or parts of laws of this state relative to the enforcement of the debts due by the corporation prevented further proceedings by the judgment creditors seeking to have the debtor corporation placed in the hands of a receiver, and refused to proceed further with the case. Relators then applied to this court for writs of certiorari and mandamus, which were granted, and the case is now before us for review.

The statute in question is emergency legislation for the purpose of protecting debtors from the enforcement of their debts through judicial proceedings, seizure, and sale, due to the fact that property sold at public auction would not bring a fair price on account of the general stagnation of business.

Section 1 of the statute reads, in part, as follows:

"This Act, however, *shall extend to any laws of this State relative to the enforcement of any debt due any* national banking corporation or any conservator, *receiver* or liquidator thereof, and to laws relating to the enforcement of paving liens issued by municipal corporations." (Italics ours.)

The language of the statute in other sections is general and broad enough to include debts due by corporations, for instance, sections 5 and 14 read:

"Section 5. *That where proceedings have been commenced before any court . of this State to enforce the payment or collection of any debt* (as herein defined), *public or private, or for enforcement or foreclosure of any lien, privilege, or mortgage securing the same,* the Debt Moratorium Commissioner shall have jurisdiction thereof under Section 4 of this Act; and the debtor shall have the right for relief in any and all cases, any provisions in the evidence of the indebtedness or the terms of the contract to the contrary notwithstanding, and upon the *filing in said court of the order or judgment* of the Debt Moratorium Commissioner, *all or-*

*ders, decrees or judgments of said court and all laws or parts of laws authorizing such proceeding in said court shall be suspended during the period stipulated by the Debt Moratorium Commissioner in said order."* (Italics ours.)

"Section 14. The term 'debt' as herein used shall be construed to *include any evidence of indebtedness whatsoever,* and any and all liens, privileges, or mortgages which might secure the payment of the same, including the vendor's lien, and conventional mortgages, *judgments* and legal or *judicial mortgages,* except bonds of the State or of any political subdivision or municipality."

See, also, section 4.

It is our opinion that a corporation whose creditor is seeking to enforce his claim may avail itself of the benefits of the moratorium statute, and the commissioner, after proper hearing, is authorized to issue an order or judgment in favor of the debtor corporation, suspending the laws of this state for the enforcement of the debt.

Relator contends, with reference to the second ground of the judgment, that the court erred in not appointing a receiver to take over all of the corporation's property and affairs, and administer the same during the period of moratorium, for the purpose of conserving them for the benefit of the creditors and stockholders, but not for the purpose of having the assets of the corporation sold at public sale and the corporation liquidated.

The district judge, in his return, states: "That your respondent herein did not dismiss the suit, but did enter an order suspending the same * * * until the period of the moratorium had expired (March 14, 1936) * * *.

"Until the constitutionality of the Moratorium Law of Louisiana has been successfuly attacked, it is the duty of your respondent to recognize it.

"* * * If the relators in this matter felt aggrieved by the decree of the Moratorium Commissioner, they should have appealed to the courts for a review and modification of the order, as prescribed in the Moratorium Act."

The record shows that relators did not appeal from the commissioner's judgment granting the suspension in favor of the debtor.

▮ The appointment of a receiver places the property of the debtor corporation in actual custodia legis during the period of the receivership. It is one of the processes of law designed for the purpose of enforcing, through judicial proceedings, the payment of debts due by a corporation.

The statute clearly shows that the lawmakers wanted to give the debtor a respite from harassment by his creditors for a reasonable time and to maintain him in possession of his property. Under relators' theory, the debtor corporation would be deprived of its property, and this would be equivalent to denying it the benefits

of the statute, for without its property and the administration of its affairs, the corporation would be without any means of earning money with which to pay the creditors. Furthermore, placing the corporation in the hands of a receiver means additional expense in the form of fees, costs of court, etc. There is no doubt that under the language of sections 4, 5, and 14 the rights of a judgment creditor are suspended by virtue of the decree of the moratorium commissioner. Therefore, our learned brother below properly held that he was without jurisdiction to seize the property or place it in custodia legis and thereby deprive the debtor of the use and enjoyment of the property during the moratorium period.

Counsel for relators complain that during that period of time the officers of the company will fraudulently dissipate and alienate the assets of the corporation so that the creditors will not receive anything. The answer to that argument is that relators' remedy was to appeal from the order granting the moratorium, if they were dissatisfied, as was their right under section 8 of the statute.

Relators had a further remedy, as provided in section 7, which reads as follows:

"Upon the application of either creditor or debtor prior to the expiration of any suspension granted under this act and upon presentation of evidence that the terms fixed by the Debt Moratorium Commissioner are *no longer just and reasonable, the Commissioner may revise and alter said terms, in such manner as the changed circumstances and conditions may require*." (Italics ours.)

We conclude that the trial court was correct in refusing to proceed further with the appointment of a receiver.

For the reasons assigned, the rule to show cause is vacated, the writs recalled, and the judgment of the district court affirmed, at relators' costs.

O'NIELL, C. J., dissents.

ODOM, Justice (dissenting).

The object of Act No. 2, Second Extra Session of 1934, as expressed in its title, is to provide for the "suspension of all laws or parts of laws *relative to the enforcement of debts * * * during the* emergency declared to exist, in order to provide relief to debtors who are unable to meet their obligations for the time being."

Section 4 of the act provides that the "Debt Moratorium Commissioner * * * shall have authority * * * to suspend all laws or parts of laws *relative to the enforcement of any debt * * ** and to suspend all laws or parts of laws authorizing the reduction of any such debt to judgment or *the enforcement thereof,* or the *enforcement* of any lien, privilege or mortgage securing the same, through the means of any judgment, conservatory writ, writ of injunction or mandamus, writ of fieri facias or execution, or order of

executory process, or other process whatsoever."

The language of both the title and the body of the act makes it perfectly clear that the purpose of the act was to provide for the suspension of only such laws as pertain to the enforcement of debts during the emergency which the Legislature declared to exist. The act merely provides a method by which debtors may obtain a moratorium, that is, a period during which they have a right to delay meeting of their obligations.

It was not intended, I think, to suspend Act No. 159 of 1898, as amended, authorizing the appointment of receivers for corporations (2) "at the instance of any stockholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation." Section 1.

If what the creditors of this corporation allege is true, those presently in charge of it are not only committing acts ultra vires, but have looted its treasury, and are systematically converting the corporate assets to their own use and benefit. Whether that be true or not is for the court to determine after hearing the parties.

The creditors of this corporation are not seeking to enforce their claims at this time, but are asking that a receiver be appointed to take over and manage its affairs so that its assets may be preserved. A receiver is an indifferent person between the parties appointed by the court on behalf of all parties. He is the "arm and hand of the court, a part of the machinery of the court by which the rights of parties are protected."

Surely the Legislature did not intend by the passage of the moratorium statute to provide a method by which unfaithful, incompetent, or dishonest officers of a private corporation could prolong their tenure and thereby continue their mismanagement of the corporate affairs.

I dissent from the majority holding.